Civil action to recover proceeds of life insurance policy on the life of, and payable to the estate of Isaac R. Strayhorn, deceased, allegedly collected upon parol agreement of defendant to collect and pay over same to plaintiff for whose alleged benefit the policy was issued.
Isaac R. Strayhorn, younger brother of plaintiff, and former husband of defendant, died 3 September, 1923, in Nice, France, as result of injuries received in wreck of public bus in which he and his wife were traveling. He left a last will and testament in which, after directing payment *Page 45 
of his debts, he gave all his property to his wife, the defendant, and named her as executrix. At time of his death, Policy No. 31980 of insurance for $1,000, issued by Jefferson Standard Life Insurance Company in 1913, payable to his estate, was in effect.
Evidence introduced by plaintiff tends to show: That he advanced to his brother, Isaac R. Strayhorn, for his college education approximately $2,000; that during Isaac's senior year in college plaintiff had said policy of insurance taken out for his protection; that he received the policy from insurance company and, without reading it, filed it in his safe in the office of clerk of Superior Court of Orange County, N.C. which position he then held; that he paid the premiums for three or four years until Isaac "got on his feet"; that the policy remained in said safe until after the death of Isaac R. Strayhorn; that, upon writing to the insurance company with respect to paying the insurance, he was informed that the policy was payable to the estate of insured and that the company would only make payment to proper representative of the estate; that this was the first information or knowledge he had that he was not named as the beneficiary; that in November, 1923, after the body of his brother was brought home and buried, he told defendant the circumstances under which he had taken out the policy; that he could not collect it; that he was advised that the only way he could collect would be through and by the executor, and that he said to her: "Wylanta, I would like for you to collect this money now, and turn it over to me because I took it out on Ike to help him reimburse me for money spent on him for his education," and that she said: "Charles, I will be glad to do it"; that he went off and had no further conversation with her, but in a few days from Hillsboro, N.C. wrote her a letter in which he said, in part: "I enclose herewith the Jefferson Standard Life Insurance Company policy for $1,000 about which I was speaking to you the other day. Isaac was indebted to me in sum of about $2,000 for his education, for which he had promised to reimburse, however I never took any note from him or had him to secure me in any way, believing that he would some day be financially able to meet all his obligations, inasmuch as I had great faith in his ability and his possibilities as a lawyer. If in your opinion the above is a true statement, and the proceeds of Isaac's estate are sufficient to meet his obligations, I would be glad to talk the matter over with you as I am sure we can come to a satisfactory adjustment of the same"; that he filed no claim with defendant other than this; that in December, 1924, he suffered a nervous breakdown and was confined to his room almost continuously from then until two years ago, except for time he was in Tucker Sanitarium at Richmond; that he didn't get out of doors for eleven years and did no work of any kind during that period until July, 1937; that he made no further demand *Page 46 
upon her for payment until he had his attorney write letter 13 September, 1937, in which there was set forth a rehearsal of plaintiff's contention of the circumstances under which the policy of insurance was issued and of the alleged promise of defendant to collect same for plaintiff, and of her failure to do so, with demand for payment.
On cross-examination plaintiff testified: That he guessed he had changed his tune, and now claims that he has security; that his recollection now, fourteen years later, may be better than it was in 1923; that he is unable to explain statements in his letter of November, 1923; that he does not know why he has waited so long to bring this lawsuit.
Defendant denies that plaintiff claimed the policy of insurance was taken out for his benefit, denies any promise to collect insurance for plaintiff, denies that plaintiff filed any claim against the estate, and pleads the 7-year statute of limitations, C. S., 438, the 12-months statute of limitations, C. S., 101, and the statute of frauds, C. S., 987, in bar of plaintiff's right to recover.
Defendant introduced in evidence, among others, these portions of plaintiff's complaint: "That plaintiff did not file with defendant as administratrix for the amount due him by his brother, the defendant's husband," and "That on August 2, 1925, the defendant filed a final report as executrix of the estate of her deceased husband which showed the total disbursements to be $1,831.02, which left a net deficit after deducting the receipts of $811.02, which she stated in her report had been paid from her own private funds."
Defendant further offered evidence tending to show: That in due course she filed inventory and annual and final accounts and same were duly recorded; that in inventory she listed as an asset of the estate "life insurance policy No. 31980, issued by Jefferson Standard Life Insurance Co., on life of Isaac R. Strayhorn payable to his estate for $1,000"; that in her annual report and final account as executrix she listed as receipts $1,012.80, specifying as part thereof the $1,000 from the said insurance policy, and showed disbursements in approximately the sum of $811.02 more than she had received; that she paid debts of the estate from the estate funds as long as same lasted and then, as a matter of pride and out of respect for her husband, from her own private funds; and that final report was audited and approved by the clerk on 11 August, 1926.
The case was submitted on these issues, which the jury answered as follows:
"1. Did the plaintiff take out a policy of life insurance in the sum of $1,000 with the Jefferson Standard Life Insurance Company on the life of Isaac Strayhorn in November, 1913, to protect himself for advances made to Isaac Strayhorn while in college, with instructions to the agent that it should be made payable to himself, and by mistake it was made *Page 47 
payable to the estate of Isaac Strayhorn, and did the plaintiff pay the annual premiums on said policy for first four or five years only? Answer: `Yes.'
"2. After Isaac Strayhorn's death and after the defendant had qualified as executrix of his estate, did the plaintiff and the defendant enter into an agreement that the plaintiff would turn over the said life insurance policy on the life of Isaac Strayhorn for $1,000 to the defendant and that the defendant would collect the same and pay it over to the plaintiff? Answer: `Yes.'
"3. Is the plaintiff's action barred by the statute of limitations? Answer: `No.'
"4. In what amount, if any, is the defendant indebted to the plaintiff? Answer: `$1,000.00.'"
From judgment thereon defendant appealed to the Supreme Court, and assigns error.
Careful consideration of the entire record on this appeal leads to the conclusion that the court below erred in refusing to allow motions for judgment as in case of nonsuit, made by defendant in apt time, to which exceptions are preserved, and here assigned as error.
While plaintiff states his alleged cause of action against the defendant as an individual, the proof shows that in dealing with her with respect to the alleged agreement to collect on the insurance policy and pay over the proceeds to him, he, of necessity, dealt with her in her representative capacity as executrix of the last will and testament of the insured. The policy, on its face and nothing else appearing, being payable to the estate of the insured, as soon as delivered vested in him and "like any other chose in action became an integral part of his estate, subject to every rule of property known to the law," Burton v. Farinholt, 86 N.C. 260, and, upon his death, vested in the executrix, Price v. Askins, 212 N.C. 583,194 S.E. 284; Linker v. Linker, 213 N.C. 351, 196 S.E. 329, in which capacity only had she the right to make the collection. When she collected, she received the money as executrix. Rights of creditors then intervened, and if plaintiff had superior rights the way was then open to him to assert them in orderly and legal procedure. Having had years of experience as clerk of Superior Court in supervising and handling of estates and trust funds, he must have known that defendant as an individual had no legal right to collect the proceeds of the insurance policy and pay them over to plaintiff. If she had *Page 48 
agreed to do so, he would have been a party to the wrong, and could not take advantage of it.
If it be conceded that plaintiff had an equitable interest in the policy, and that the conversation between him and defendant transpired as stated by him, and that the policy was delivered to defendant in consequence thereof, taking the evidence in the light most favorable to plaintiff and giving to him the benefit of every reasonable intendment and reasonable inference to be drawn therefrom, the most that appears is that plaintiff appointed the defendant his agent to collect the policy and pay over the money to him. There is no evidence that she, in her individual capacity, collected or received any of the proceeds of the policy. Hence, proof of parol trust fails.
In any event, the conduct of the plaintiff portrayed in this record manifests such laches as would bar the action. Equity aids the vigilant, not those who have slept upon their rights.
The judgment below is
Reversed.