BRUNSWICK COUNTY, A MUNICIPAL CORPORATION v. CHARLES HARPER VITOU, ERNEST VITOU, MARGARET SWAN HOOD, CHARLES VITOU, JR., AND JEANETTE K. VITOU, BY HER GUARDIAN AD LITEM, MARY VITOU

No. 6913SC247

(Filed 27 August 1969)

1. **Executors and Administrators § 13— primary liability for decedent's debts — personalty**

    Personalty is primarily liable for the payment of a decedent's debts, including judgments and obligations secured by mortgages, and the real estate is secondarily liable and may be resorted to only in the event that the personalty is insufficient to pay all debts in full.

**2. Public Welfare;  Executors and Administrators § 20— satisfaction of old age assistance lien — necessity for exhaustion of estate personalty before resorting to realty**

When old age assistance is terminated by death of the recipient, the county's claim against the recipient's estate under G.S. 108-30.1 must be satisfied out of the personal property of the estate to the extent it is sufficient to pay claims of the sixth class under G.S. 28-105 before resorting to the real property for satisfaction of the debt.

APPEAL by defendant from *Bailey, J.*, 21 October 1968 Session, BRUNSWICK Superior Court.

This action was instituted to enforce an old age assistance lien against the estate of Annie K. Vitou, deceased. Until her death in October 1967, Annie K. Vitou was a recipient of old age assistance from the Department of Public Welfare of Brunswick County amounting to $8,637.20, by virtue of her application therefor under Chapter 108 of the General Statutes of North Carolina. Pursuant to the provisions of G.S. 108-30.1 and G.S. 108-30.2, the plaintiff, Brunswick County, sought to enforce its lien in the amount of $8,637.20 against certain real estate owned by decedent at the time of her death. The defendants are Charles Harper Vitou, who is a son of the deceased and administrator C.T.A. of her estate; Ernest Vitou, who is the other son of the deceased; Margaret Swan Hood, who was devised the real estate in question by the deceased; and Charles Vitou, Jr. and Jeanette K. Vitou, who are grandchildren of the deceased and the beneficiaries under the residuary clause of her will.

Plaintiff and defendants waived trial by jury and agreed that the court might hear the evidence, find the facts and render judgment. Upon finding facts substantially as above, the court concluded that plaintiff was entitled to enforce its lien for $8,637.20 against the estate of Annie K. Vitou, "first by selling the real estate and then should there then be a yet unpaid balance on the lien to require its payment under Class Six of claims, G.S. 28-105." Defendant, Margaret Swan Hood, excepted to the entry of this judgment and appealed to the Court of Appeals.

*Kirby Sullivan for defendant appellant.*

*E. J. Prevatte, for plaintiff appellee, Brunswick County.*

*Henry & Henry, by Everett L. Henry, for defendant appellees.*

BROCK, J.

Defendant assigns as error the judgment of the trial court that the real property of the estate of Annie K. Vitou be sold to pay the

old age assistance lien before resort is had to the personal property of the estate.

G.S. 108-30.1 provides in pertinent part: "There is hereby created a general lien, enforceable as hereinafter provided, upon the real property of any person who is receiving or who has received old age assistance, to the extent of the total amount of such assistance paid to such recipient from and after October 1, 1951. Before any application for old age assistance is approved under the provisions of this article, the applicant shall agree that all such assistance paid to him shall constitute a claim against him AND AGAINST HIS ESTATE, ENFORCEABLE ACCORDING TO LAW by any county paying all or part of such assistance." (Emphasis added.)

Then G.S. 108-30.2 sets forth the action to be taken upon termination of old age assistance. When it appears that the recipient of old age assistance has owned any realty at the time of or since the date of the filing of the lien or the estate consists of over $100.00 in personal property, or a personal representative has been appointed, then "the county attorney shall take such steps as he may determine to be necessary to enforce the claim or lien herein provided." G.S. 108-30.2. In addition it provides that "[T]he claim against the estate of a recipient herein provided for shall have equal priority in order of payment with the sixth class under § 28-105 of the General Statutes."

Plaintiff appellee contends that the provisions of these statutes authorize the county attorney to make an election as to whether to proceed against the personal property of the estate or go directly to the real property of the estate in order to satisfy the old age assistance lien. Defendant appellees, on the other hand, contend that the statutes empower the personal representative of the deceased to make the election as to what assets are to be used to satisfy the old age assistance lien. We disagree with both of these contentions.

G.S. 108-30.1 provides: "Each county department of public welfare shall notify all persons shown of record to be recipients of old age assistance as of the date of notice that all old age assistance grants paid from and after October 1, 1951, shall constitute a lien against the real property and a claim against the estate of each recipient. The notice may be given by letter mailed to the last known address of each recipient, but failure to give such notice shall not affect the validity of the lien." The trial court made findings of fact that prior to October 1951, Annie K. Vitou, deceased, was receiving old age assistance from plaintiff county and that the notice of a lien

BRUNSWICK COUNTY *v.* VITOU

and a claim against her estate was given on 1 August 1951 as required by the Statute.

[1] Since the assistance was terminated by death of the recipient in this case, the claim must be enforced according to the law pertaining to administration of estates. The well established rule in administering an estate in North Carolina is that the personalty is primarily liable for the payment of a decedent's debts, including judgments and obligations secured by mortgages, and the real estate is secondarily liable and may be resorted to only in the event that the personalty is insufficient to pay all debts in full. Wiggins, Wills and Administration of Estates in North Carolina, § 235, p. 710. "When a debtor dies his real estate descends to his heirs or vests in his devisees, and possession of his personal estate vests in his executor or administrator. The personalty is primarily liable for the payment of his debts, including judgments and obligations secured by mortgages for, though secured, they are nonetheless debts, and heirs and devisees are entitled to have them paid out of the personal estate to the exoneration of the security." *Moore v. Jones,* 226 N.C. 149, 36 S.E. 2d 920.

We have not overlooked the fact that G.S. 108-30.1 does create a general lien against the real estate owned by a recipient of old age assistance. However, the legislature, by creating the lien, did not intend that the county attorney, or any other person, should have the option of electing what assets of the estate to proceed against to enforce the lien. The primary intent in creating the general lien was to secure the county against a third party's acquiring a superior interest in the real estate of the recipient.

[2] For the reasons indicated, we hold that when old age assistance is terminated by death of the recipient, that the county's claim against the recipient's estate under G.S. 108-30.1 must be satisfied out of the personal property in the estate to the extent it is sufficient to pay claims of the sixth class (under G.S. 28-105) before resorting to the real property for satisfaction of the debt. Therefore, the judgment of the trial court must be reversed.

Reversed.

CAMPBELL and MORRIS, JJ., concur.